# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br><br>        Plaintiff,<br><br>    v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>        Defendants. | Case No.  1:19-cv-00784-DAD-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM<br><br>(ECF No. 33)<br><br>FOURTEEN-DAY DEADLINE |

      Plaintiff Allen Hammler ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. On November 19, 2019, the Court screened Plaintiff's complaint and granted him leave to amend. (ECF No. 14.) Plaintiff's first amended complaint, filed on May 27, 2020, is currently before the Court for screening. (ECF No. 33.)

**I.     Screening Requirement and Standard**

      The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at California State Prison, Corcoran, where the events in the complaint are alleged to have occurred.  Plaintiff names the following defendants: (1) State of California; (2) California Department of Corrections and Rehabilitation ("CDCR"); (3) Correctional Officer Burnes; (4) Correctional Officer Moreno; (5) Correctional Officer Randolph; (6) Correctional Officer Silva; (7) Correctional Officer Llamas; (8) Correctional Officer Resa; (9) Correctional Officer and Counselor E. Moreno; (10) Correctional Officer Rocha; (11) Correctional Officer Cabrara; (12) Former CDCR Secretary Scott Kernan; (13) Current CDCR Secretary Ralph Diaz; and (14) Does 1-10.

Plaintiff alleges as follows:  On March 3, 2019, Defendant Moreno went to Plaintiff's cell. Defendant Moreno stated that he had been instructed by Defendant Resa to have Plaintiff sign a form indicating that a package for Plaintiff could be returned to the vendor.  Plaintiff refused to sign the form and informed Defendant Moreno that he was not on any package restriction and he was clear to receive the package.  Defendant Moreno told Plaintiff that he was not clear because

he had not been inside the Administrative Segregation Unit ("ASU") or the Security Housing Unit ("SHU") for more than one year.

Plaintiff told Defendant Moreno that he had been in ASU for over one year as mandated before an ASU prisoner is allowed to receive a package. Plaintiff then showed Defendant Moreno documentation to substantiate that fact in the form of a CDCR SHU Auditor Action form dated March 20, 2018, which noted that Plaintiff was placed in ASU on February 13, 2018. Plaintiff also showed him a CDCR Bed Assignment sheet dated November 20, 2018, along with a CDCR 128-G dated February 19, 2019, which showed that Plaintiff had been in ASU continually for more than one year. Defendant Moreno then told Plaintiff that the problem was that the 128-G form noted Plaintiff to be in Privilege Group D2D as of November 23, 2018 through April 22, 2019, which meant that he had not been in ASU for a year and had been assigned to the D2D Privilege Group by the ICC Committee. Defendant Moreno indicated that he would inform Defendant Resa, the supervisor handling the matter. Defendant Moreno told Plaintiff that he would return the next day with his package. Defendant Moreno did not return the next day. However, Plaintiff saw Defendant Randolph walking up the stairs and spoke to him regarding the package. Defendant Randolph yelled that Plaintiff was on restriction.

Plaintiff believed he was being retaliated against in a conspiracy because he had lodged complaints and voiced his concerns regarding Defendant Randolph and Defendant Burnes' illegal activities inside the ASU. Plaintiff also attempted to speak to Defendant Burnes on March 4, 2019, but Defendant Burnes refused to speak to him.

On March 5, 2019, Plaintiff again attempted to speak to Defendant Burnes (or another ranking correctional officer) by asking other correctional officers to tell Defendant Burnes that Plaintiff wished to speak to him. The other correctional officers refused because they were either named in a complaint for their unconstitutional conduct in mistreating the mentally ill prisoners in the unit or were bound by the prison's unwritten code of silence. Because Plaintiff was unable to have a correctional officer aid him in obtaining the attention of a ranking/supervising officer, Plaintiff then initiated the process to see "Team," which Plaintiff describes as a response team consisting of a psychologist, registered nurse and a sergeant, who speak to a prisoner/patient to

3

determine if he has an issue with which they can help.  Plaintiff asserts that the Team is used to address issues possibly causing a prisoner to be in distress.  To initiate the process, a prisoner has to inform prison officers that he is suicidal.  Plaintiff reports that he has never attempted to harm himself, take his own life or speak of such things except to report that he was suicidal in order to be allowed to see Team (or a psychologist) to intervene in his mistreatment by other correctional officers inside the ASU/CCCMS.  Plaintiff also notes that he is of a religious faith that does not allow his entering Heaven if he kills himself.

Plaintiff informed Correctional Officer Rojas that he was suicidal so that Team could be initiated.  In doing so, Plaintiff refused to exit his cell, which required Officer Rojas to remain posted at Plaintiff's cell door until the psychologist arrived.  While waiting for the psychologist, Defendant Burnes approached Plaintiff's cell and attempted to get Plaintiff to exit the cell by informing Plaintiff that he had a phone interview for a CDCR 602 complaint regarding Kern Valley.  Plaintiff asked why Defendant Burnes had not informed the caller that he was actively on suicide watch and could not be interviewed.  Defendant Burnes responded that he thought Plaintiff might want to come out.  Plaintiff stated that he was not going to come out and could not take part in an interview until he was cleared by psych.  Defendant Burnes then asked if all of it was because Plaintiff wanted his package.  Defendant Burnes was hoping to get Plaintiff to say that it was so that a Rules Violation Report could be issued for manipulating staff.  Plaintiff told him no and that he would speak to the psych about it.  Plaintiff asked Defendant Burnes if he was acknowledging that he was interfering with Plaintiff receiving the package.  Plaintiff and Defendant Burnes had a brief exchange about whether defendants would be able to get away with saying that they were denying him the package for being on property restriction.  Defendant Burnes then told Plaintiff that he would not get a package.  Plaintiff told Defendant Burnes that he did not have a say and that Plaintiff had the paperwork to prove his time in ASU.  Plaintiff would not leave the cell for the interview because he was on suicide watch.  Defendant Burnes told Plaintiff that he was going to tell them that Plaintiff refused the interview.

About 20 minutes after Defendant Burnes left, Plaintiff's primary psychologist and a mental health supervisor arrived.  Plaintiff informed them of the issues that had caused him to

4

1  report suicidal. Plaintiff was informed that if he continued to refuse to exit his cell, the cell
2  extraction process would be initiated. Plaintiff understood and wanted to speak to a higher-
3  ranking officer. Defendant Silva then arrived. Plaintiff told Defendant Silva that he had been
4  found guilty of an RVR and placed on Loss of Privileges, but only for appliances, such as a
5  television, but had been left with no package restrictions so that he could receive the package
6  containing supplies he had ordered for an upcoming civil trial. Defendant Silva questioned
7  Plaintiff about his standing to receive packages and Plaintiff showed him all of the documents
8  necessary to substantiate that he was not on loss of privileges and had been in ASU for over a
9  year. Plaintiff also showed him information that the 128-G noted he was placed in privilege
10 group D2D on November 23, 2018, but he had not been taken to ICC and assigned to D2D until
11 February 19, 2019, and that he had been officially in ASU a year on February 13, 2019. Plaintiff
12 claims that the February 19, 2019 D2D assignment could not have precluded him from receiving
13 the package prior to D2D assignment.
14     Defendant Silva then went to speak to Defendant Llamas. When Defendant Silva
15 returned, he told Plaintiff that Defendant Llamas said that Plaintiff did not have a package coming
16 because he was D2D. Plaintiff then asked Officer Rojas to call Psychologist Kyle. The cell
17 extraction was then cancelled by Psychologist Kyle.
18     On March 7, 2019, Plaintiff talked with Defendant Moreno and explained that he was
19 denied his right to receive the package due to Defendant Moreno's failure to ensure that the
20 correct information was reflected in the computer and on the 128-G. Defendant Moreno told
21 Plaintiff that he would inform Defendant Llamas that Plaintiff was eligible to receive the package.
22 Defendant Moreno returned and told Plaintiff that Defendant Llamas would call and inform
23 Defendant Resa to convey the package to Plaintiff.
24     On that same date, Plaintiff had Defendant Cabrara call Defendant Llamas to confirm.
25 Defendant Cabrara informed Plaintiff that Defendant Llamas acknowledged the wrong and
26 ordered her to call Defendant Resa to issue the package to Plaintiff. Defendant Cabrara did so
27 "and had Defendant Randolph intervene, instruct Resa to open the package and convey only ink
28 pens and legal pads to Plaintiff which he did without Plaintiff's authorization engendering the tort

of conversion." (ECF No. 33 at 18.)

On March 16, 2019, Defendants Moreno and Rocha opened the package and removed only ink pens and legal paid. Defendants Moreno and Rocha then went to Plaintiff and informed him that the items had not come from the package, but from other personal property. Plaintiff claims that they coerced him into signing a CDCR 1083 property form dated March 17, 2019, guided by their false statements and in concert with Defendant Randolph. Plaintiff claims this was a conspiracy to deprive him of due process and all other protected rights.

Plaintiff alleges that defendants' actions were intentional, unjustifiable, malicious, wanton, arbitrary, oppressive, taken for no penological reason and with a conscious disregard for Plaintiff's constitutional rights. Plaintiff further alleges that the actions were taken with evil intent to retaliate against him for exercising his right to speak about the deplorable treatment of mental health prisoner/patients and for verbalizing complaints to mental health staff. Plaintiff admits that with regard to retaliation, a complete chilling did not result.

Additionally, Plaintiff claims that defendants violated his due process rights by assigning him to the D2D privilege group, where such assignment could only be accomplished via an ICC hearing. Plaintiff asserts that Defendants each acknowledged that they had illegally assigned him to D2D, but they failed to correct it in adherence with the unwritten policy and pattern of the code of silence. Plaintiff alleges that D2D is atypical even of the lowest standard of living.

Plaintiff forwards the following purported claims: (1) retaliation in violation of the First Amendment; (2) illegal seizure of his personal property in violation of the Fourth Amendment; (3) cruel and unusual punishment in violation of the Eighth Amendment for; (4) deliberate indifference in violation of the Eighth Amendment; (5) violation of Due Process of the Fourteenth Amendment; (6) conspiracy under 42 U.S.C. § 1985; (7) conversion; and (8) negligence, including negligent supervision.

As relief, Plaintiff seeks general and punitive damages. He also seeks injunctive relief.

**III.   Discussion**

    **A.   Eleventh Amendment Immunity**

Plaintiff is informed that the Eleventh Amendment prohibits federal courts from hearing a

Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override...." Dittman v. California, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." See Fireman's Fund Ins. Co. v. City of Lodi, Cal., 302 F.3d 928, 957 n. 28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court...." Dittman, 191 F.3d at 1025–26 (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)); see also Brown v. Cal. Dep't. of Corrs., 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity). Therefore, Plaintiff cannot pursue claims for damages or injunctive relief against the State or CDCR in this action.

### B. Supervisory Liability

To the extent that Plaintiff seeks to hold Warden Kernan or Secretary Ralph Diaz liable based solely on their supervisory roles, Plaintiff may not do so.

Supervisory personnel may not be held liable under section 1983 for the actions or omissions of subordinate employees based on respondeat superior, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa Cty., 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977; accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff's amended complaint does not include allegations linking Defendants Kernan or Diaz to any constitutional violation nor does it include allegations that Defendants Kernan or Diaz implemented a deficient policy. Plaintiff has been unable to cure the deficiencies in his complaint regarding supervisory liability.

### C. First Amendment

#### 1. Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Id. at 567-68 (9th Cir. 2005); accord Watison, 668 F.3d at 1114-15; Brodheim, 584 F.3d at 1269.

Plaintiff's amended complaint fails to state a cognizable claim for relief based on retaliation in violation of his First Amendment rights. Plaintiff's allegations are insufficient to demonstrate that any defendant took an adverse action against him because of any protected conduct. Indeed, Plaintiff's amended complaint demonstrates that the initial denial of his package was based on his classification status, not as retaliation. Plaintiff's amended complaint also demonstrates that he was provided at least a portion of the package's contents. Plaintiff's conclusory allegations and recitation of the elements of a retaliation claim are not enough to state a claim. Further, Plaintiff has not adequately alleged that the remaining contents of his package, if any, were allowable or that there was not a legitimate penological reason for withholding them. Plaintiff also admits that the conduct at issue did not have chilling effect.

#### 2. Incoming Mail

Plaintiff's allegations center around his First Amendment right to receive mail. Generally,

8

prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). However, there must be a "delicate balance" between prisoners' First Amendment rights and the discretion given to prison administrators to govern the order and security of the prison. Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989). A prison may adopt regulations or practices for incoming mail which impinge on prisoners' First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Nonetheless, isolated incidents of mail interference or tampering will not support a claim under section 1983 for violation of plaintiff's constitutional rights. See Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (temporary delay or isolated incident of delay of mail does not violate a prisoner's First Amendment rights); see also Davis v. Goord, 320 F.3d 346, 351 (2d. Cir.2003) (isolated incident of mail tampering usually insufficient to state claim). Here, Plaintiff alleges only an isolated incident of a single package being withheld, which is not sufficient to support a constitutional violation.

### D. Fourth Amendment – Seizure

Plaintiff's Fourth Amendment claim fails as a matter of law because Plaintiff does not have a right to be free from the search and seizure of his personal property. Hudson v. Palmer, 468 U.S. 517, 536 (1984); Taylor v. Knapp, 871 F.2d 803, 806 (9th Cir. 1989). "Lawful incarceration necessarily entails limitations upon many of the rights enjoyed by ordinary citizens. An inmate's Fourth Amendment rights are among the rights subject to curtailment. In particular, the fourth amendment does not protect an inmate from the seizure and destruction of his property." Taylor, 871 F.2d at 806 (internal citations omitted).

### E. Deprivation of Property

Plaintiff's claim for deprivation of property is grounded in the Fourteenth Amendment, not the Eighth Amendment. See, e.g., Fuller v. Nevada, No. 2:19-cv-00819-APG-BNW, 2020 WL 1469811, at *2 (D. Nev. Mar. 26, 2020) (finding prisoner's claim for deprivation of property grounded in the Fourteenth Amendment, not the Eighth Amendment); Perryman v. Dir., No. 2:19-CV-2480 DB P, 2020 WL 311661, at *2 (E.D. Cal. Jan. 21, 2020) (finding prisoner could not allege a claim under the Eighth Amendment for loss of his property).

      **F.**     **Fourteenth Amendment**

        **1.**     **Deprivation of Property**

Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532 n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533.

Here, Plaintiff's amended complaint is based on allegations that certain defendants engaged in an unauthorized, intentional deprivation of his property. Due process is therefore satisfied if there is a meaningful post-deprivation remedy available to him. Id. Plaintiff has an adequate post-deprivation remedy available under California law. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895). Therefore, Plaintiff fails to allege a cognizable due process claim based on the deprivation of his property (package) against any of the named defendants.

        **2.**     **Classification**

Although unclear, it appears that Plaintiff is challenging his classification or assignment to privilege group D2D without a hearing by the ICC. Prisoners have no federally protected liberty interest in their classification status. See Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987). No federal due process right is implicated by a prison's classification decisions. See Meachum v. Fano, 427 U.S. 215, 224–25, (1976).

Although Plaintiff appears to complain that he was assigned to D2D without the benefit of hearing by the ICC, Plaintiff admits that he was taken to ICC and assigned to D2D on February 19, 2019.

      **G. Conspiracy**

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an

agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir.2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001). "[T]o state a claim for conspiracy under § 1985, a plaintiff must first have a cognizable claim under § 1983." Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 930 (9th Cir. 2004) (citation omitted).

Here, Plaintiff's amended complaint fails to state a claim for conspiracy. Plaintiff has not adequately alleged a meeting of the minds or a deprivation of his constitutional rights. Moreover, in the absence of a cognizable § 1983 claim, Plaintiff cannot support a claim for conspiracy under § 1985.

### H. State Law Claims

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). Here, Plaintiff's amended complaint fails to state any cognizable federal claims. It will therefore be recommended that the Court decline to exercise jurisdiction over Plaintiff's state law claims.

### IV. Conclusion and Order

Plaintiff's amended complaint fails to state a cognizable claim for relief under section 1983. Despite being provided with relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies in his complaint by amendment, and thus further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's claims brought pursuant to section 1983 in this action be dismissed

based on Plaintiff's failure to state a cognizable claim upon which relief may be granted; and

    2.    The Court decline to exercise supplemental jurisdiction over Plaintiff's purported state law claims.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:   **July 22, 2020**                      /s/ *Barbara A. McAuliffe*
                                                        UNITED STATES MAGISTRATE JUDGE

12